IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:12cv287

| | |
|---|---|
| THERESA CASE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM AND** |
| CAROLYN W. COLVIN, ) | **RECOMMENDATION** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for social security disability insurance benefits. This case came before the Court on the administrative record and the parties' Motions for Summary Judgment [# 11 & # 13]. The Court **RECOMMENDS** that the District Court **GRANT** the Commissioner's Motion for Summary Judgment [# 13], **DENY** the Plaintiff's Motion for Summary Judgment [# 11], and **AFFIRM** the Commissioner's decision.

I.   **Procedural History**

Plaintiff filed an application for disability insurance benefits on August 11, 2010. (Transcript of Administrative Record ("T.") 158.) Plaintiff alleged an onset

date of September 16, 2006. (T. 158.) The Social Security Administration denied Plaintiff's claim. (T. 131-34.) Plaintiff requested reconsideration of the decision, which was also denied. (T. 135-38.) A disability hearing was then held before an Administrative Law Judge ("ALJ"). (T. 64-91.) At the hearing, Plaintiff's attorney amended the alleged onset date to August 11, 2010. (T. 67-68.) The ALJ then issued a decision finding that Plaintiff was not disabled through the date of the decision. (T. 19-36.) Plaintiff requested review of the ALJ's decision, which was denied by the Appeals Council (T. 4-6). Plaintiff then brought this action seeking review of the Commissioner's decision.

## II. Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); see also Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Under this inquiry, the Commissioner must consider in sequence: (1) whether a claimant is gainfully employed; (2) whether a claimant has a severe

impairment that significantly limits her ability to perform basic work-related functions; (3) whether the claimant's impairment meets or exceeds the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, subpart P; (4) whether the claimant can perform her past relevant work; (5) whether the claimant is able to perform any other work considering her age, education, and residual functional capacity. Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 654 n.1; 20 C.F.R. § 404.1520. If at any stage of the inquiry, the Commissioner determines that the claimant is or is not disabled, the inquiry is halted. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

### III. The ALJ's Decision

In his January 31, 2012, decision the ALJ found that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Social Security Act. (T. 36.) The ALJ made the following specific findings:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

(2) The claimant has not engaged in substantial gainful activity since August 11, 2010, the amended alleged onset date (20 CFR 404.1571 *et seq.*)

(3) The claimant has the following severe combination of impairments: degenerative disc disease of the cervical and lumbar spine, peripheral neuropathy, fibromyalgia, generalized osteoarthritis, asthma, obesity, and major depressive disorder (20 CFR 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) with certain additional limitations. Specifically the claimant can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand, and walk for about 6 hours each out of an 8-hour workday. The claimant can occasionally climb ladders, ramps, and scaffolds. The claimant can frequently perform all other postural activities. The claimant must avoid concentrated exposures to hazards, extreme heat, and humidity. The claimant can concentrate, persist, and work at pace sufficient for the performance of simple, routine, repetitive tasks, involving level 3 common sense reasoning under the Dictionary of Occupational Titles, for 2-hour periods out of an 8-hour day. The claimant can interact occasionally with the public and with coworkers. The claimant can interact appropriately with supervisors in a stable, routine, minimal social demand type setting.

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).

(7) The claimant was born on June 30, 1958 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

(8) The claimant has at least a high school education (reads at 8th grade level) and is able to communicate in English (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not

disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the nation economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from August 11, 2010, through the date of this decision (20 CFR 404.1520(g)).

(T. 21-35.)

**IV. Standard of Review**

Section 405(g) of Title 42 provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review, however, is limited. The Court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id. When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

**V.    Analysis[1]**

**A.    The RFC Determination of the ALJ is Supported by Substantial Evidence in the Record**

Residual functional capacity is an administrative assessment made by the Commissioner as to what a claimant can still do despite his or her physical or mental limitations. SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. §§ 404.1546(c); 404.946(c). In assessing a claimant's residual functional capacity, the ALJ will consider all of the claimant's medically determinable impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2). The residual capacity assessment is based on the all the relevant medical and other evidence in the record. 20 C.F.R. § 404.1545(a)(3). In determining a claimant's residual functional capacity, the ALJ must identify the claimant's functional limitations or restrictions and assess the claimant's work-related abilities on a function-by-

---

[1] Rather than separately set forth the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

function basis.  SSR 96-8p.  The ALJ's assessment must include a narrative discussion detailing how the evidence in the record supports his or her conclusion.  SSR 96-9p.

Here, the ALJ found that Plaintiff could perform a range of light work with certain additional limitations.  (T. 27.)  Plaintiff contends that the ALJ erred by not incorporating Plaintiff's need for an assistive device into the RFC determination.  As a threshold matter, the ALJ acknowledged Plaintiff's testimony that she used a walker for ambulation.  (T. 27-29, 71, 73- 76.)   The ALJ, however, determined that Plaintiff could perform a range of light work that did not incorporate the need to use an assistant device such as a cane or walker.  (T. 26-27.)

Plaintiff's treating physician, Dr. Larry Russell, prescribed Plaintiff a walker on September 21, 2010, for Plaintiff's "gait ataxia."  (T. 431-32, 373.)  The prescription does not reflect the independent determination of Dr. Russell that the walker was medically necessary, and the record is devoid of any evidence that the cane Plaintiff was using when Dr. Russell prescribed the walker was prescribed by a treating or examining medical source.  (T. 431.)  In fact, the medical evidence in the record fails to support a conclusion that Plaintiff suffers from gait ataxia to the extent that a walker is medically necessary.  (See e.g. T. 367, 421.)   Instead, the record reflects that Dr. Russell prescribed the walker at the request of Plaintiff

because Plaintiff felt that a walker might allow her to walk more safely. (T. 431.)

In contrast, the consultative examination report of Dr. Antoinette Wall explicitly found that although Plaintiff did use a walker with a stool, it was not medically necessary. (T. 394.) Family nurse practitioner Carole Carter also annotated the chart from a range of motion test conducted November 22, 2010, to indicate that the walker was not medically necessary. (T. 386.) Finally, Nurse Carter and Dr. Wall recorded their first-hand observations regarding Plaintiff's ability to walk unassisted: "Note: After the examination the patient walked to her car without leaning on the walker, bend over to pick it up and put it [in] the trunk of the car and then walked to the driver's door without support." (T. 394.) Upon a review of the record, the Court finds that the RFC determination by the ALJ was supported by substantial evidence in the record as the evidence does not establish that Plaintiff was so limited that she could not walk without the assistance of a cane or walker. As the Court will address in more detail below, ALJ did not err in failing to assign great weight to the opinion of Dr. Russell and accepting the opinion of Dr. Wall regarding the medical necessity of Plaintiff's walker.

### B. The ALJ did not err in Considering the Medical Opinions in the Record

In evaluating and weighing medical opinions, the ALJ considers: "(1) whether the physician has examined the applicant, (2) the treatment relationship

-8-

between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d, 653 (4th Cir. 2005); see also 20 C.F.R. § 404.1527.  The ALJ, however, will give a treating source's opinion "controlling weight" where it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ." 20 C.F.R. § 404.1527(d)(2); Mastro, 270 F.3d at 178.  As the Fourth Circuit explained in Mastro:

> Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence. See Hunter, 993 F.2d at 35.

270 F.3d at 178.

Statements by medical sources that a patient is disabled, unable to work, or meets the listing requirements are not medical issues, but are administrative findings reserved for the Commissioner.  SSR 96-5p, 1996 WL 374183 (Jul. 2, 1996).  Because they are administrative findings, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."  Id.

In addition, the ALJ must provide a good reason in the notice of the determination or decision for the weight he or she gives a claimant's treating source opinions. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996). Social Security Ruling 96-2p further provides that:

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

The ALJ in this case specifically addressed the medical opinion of Dr. Russell. The ALJ found that some of Dr. Russell's opinions were inconsistent with the medical records and were entitled to little weight. (T. 33.) In reaching his decision, the ALJ set forth reasons for rejecting the opinions of Russell that were sufficiently specific to allow this Court to ascertain the weight the ALJ gave to the opinion and the reason for doing so. See SSR 96-2p.

Specifically, the ALJ found that the opinion of Dr. Russell that the use of an assistive device was necessary (T. 412) and that Plaintiff suffered from extensive degenerative disease of the lumbar spine that significantly limited Plaintiff (T. 403) were contrary to the record as a whole, inconsistent with Dr. Russell's treatment notes, and contradicted by the Plaintiff's admitted daily activities (See T. 372, 397, 404, 410-11, 455, 458, 460). As the ALJ properly determined, and as the Court

previously discussed as to the medical necessity of Plaintiff's walker, the objective medical evidence in the record does not support the severity of physical impairment opined by Dr. Russell. For example, the contemporaneous treatment notes of Dr. Russell contain normal findings that are inconsistent with his opinion of extreme physical limitations. (See e.g. 419, 421, 425, 428, 432, 452.) The treatment notes even recognize that Plaintiff exercised three times a week. (T. 420). Based upon a review of the record, the Court finds that the ALJ did not err by assigning little weight to the medical opinion of Russell while affording great weight to the opinions of the State agency medical consultants. Faced with substantial contradictory evidence, including Dr. Russell's own treatment records, the ALJ was entitled to assign little weight to Dr. Russell's opinions, despite the fact that he was Plaintiff's treating physician. See Mastro, 270 F.3d at 178. The ALJ did not err in weighing the medical opinions in the record, and the RFC determination of the ALJ is supported by substantial evidence in the record. Accordingly, remand is not required in this case and the District Court should affirm the decision of the ALJ.

### C. The ALJ did not err in Evaluating Plaintiff's Subjective Complaints of Pain

Plaintiff contends that the ALJ failed to properly consider the Plaintiff's statements regarding her pain. As an initial matter, the Court recognizes that it is

not the role of this Court to determine whether Plaintiff's testimony was fully credible. Craig, 76 F.3d at 589. Rather, the question for the Court is whether the ALJ applied the proper legal standard in assessing Plaintiff's credibility and whether the ALJ's decision is supported by substantial evidence. Id.

In assessing a claimant's statement of pain and other symptoms, the ALJ applies a two part process. Id. at 594; Hines, 453 F.3d at 565. First, the ALJ must assess whether there is a medically determinable physical impairment that could reasonably be expected to produce claimant's symptoms. 20 C.F.R. §404.1529(c)(1); Craig, 76 F.3d at 595; Hines, 453 F.3d at 565. If the ALJ finds that a claimant suffers such an impairment and that the impairment could reasonably be expected to produce the symptoms of pain of which claimant complains, the ALJ proceeds to step two. 20 C.F.R. § 404.1529(c)(1); Aytch v. Astrue, 686 F. Supp. 2d 590, 604 (E.D.N.C. 2010).

At the second step, the ALJ must evaluate the intensity and persistence of the pain, as well as the extent to which the claimant's symptoms and pain impact his or her ability to work. 20 C.F.R. § 404.1529(c)(1); Craig, 76 F.3d at 595. "This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus the ALJ must consider conflicts between the claimant's

statements and the rest of the evidence." Aytch, 686 F. Supp. 2d at 604. This evaluation takes into account all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, other objective medical evidence, and testimony or statements from claimant, physicians, or others regarding the pain and symptoms. 20 C.F.R. § 404.1529(c)(1) & (2); Craig, 76 F.3d at 595.

Here, the ALJ applied this two-step process in assessing Plaintiff's statements regarding her symptoms. (T. 27-29.) The ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleged. (T. 28.) The ALJ then found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (T. 28.) The ALJ provided detailed and specific reasons for why he found Plaintiff's testimony not fully credible. (T. 28-29.) For example, the ALJ found that Plaintiff's allegations of pain were inconsistent with the objective medical evidence in the record, the report of Dr. Wall and Ms. Carter, Plaintiff's behavior at the hearing, and Plaintiff's daily activities. (T. 28-29.) The ALJ noted that Plaintiff, among other daily activities, drives, goes to the grocery store once a week for several hours, pays her bills and

manages her money, goes to church, and prepared her meals. (T. 29, 215-217, 231, 233, 259.) Plaintiff's medical records also reflect that she exercised three times a week. (T. 29, 335, 338, 434, 438, 441.) In addition, the ALJ did not err by considering his personal observations at the hearing as part of his overall creditability determination. SSR 96-7p, 1996 WL 374186, at *8 (Jul. 2, 1996) ("In instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject the individual's complaints solely on the basis of such personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements.") As the ALJ correctly noted, Plaintiff's conduct at the hearing was not consistent with her statement that she had a pain level of nine out of ten at the hearing. (T. 85.)

Although Plaintiff may disagree with the result that the ALJ reached based on the application of this two-step process, the record is clear that the ALJ applied the correct legal standard in assessing Plaintiff's credibility, and it is not the role of this Court to re-weigh the evidence and determine whether Plaintiff's testimony is credible. See Craig, 76 F.3d at 589. The Court finds that the ALJ's determination that Plaintiff's testimony was not fully credible is supported by substantial evidence in the record. Accordingly, the Court finds that Plaintiff's contention that the ALJ erred in evaluating the frequency and severity of Plaintiff's symptoms is

without merit.

## VI. Conclusion

The Court **RECOMMENDS** that the District Court **GRANT** the Commissioner's Motion for Summary Judgment [# 13], **DENY** the Plaintiff's Motion for Summary Judgment [# 11], and **AFFIRM** the Commissioner's decision.

Signed: October 30, 2013

Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).